## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLIAM PRESTON WEST, JR. and      :
CAROLYN B. GLEASON, His Wife
4324 Verplanck Place, N.W.      :
Washington, D.C. 20016

     :

         Plaintiffs,      :

     v.      :

BAYER HEALTHCARE
PHARMACEUTICALS, INC.      :
6 West Belt Plaza
Mail Stop W65      :
Wayne, New Jersey 07470

     :

         and      :      Civil Action No.

TRIAD GROUP, INC.      :
700 West North Shore Drive
Hartland, Wisconsin 53029

     :

         and      :

TRIAD PHARMACEUTICALS, INC.      :
700 West North Shore Drive
Hartland, Wisconsin 53029

     :

         and      :

H&P INDUSTRIES, INC.      :
700 West North Shore Drive
Hartland, Wisconsin 53029      :

         Defendants.      :

     :

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

## COMPLAINT

**(Contaminated Pharmaceutical Product:  Serious Personal Injuries:  Negligence, Gross Negligence, Failure to Warn, Strict Liability, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for Particular Purpose, Loss of Consortium)**

Plaintiffs William Preston West, Jr. and Carolyn B. Gleason, by and through undersigned counsel, hereby sue the Defendants Bayer Healthcare Pharmaceuticals, Inc., Triad Group, Inc., Triad Pharmaceuticals, Inc., and H&P Industries, Inc., and allege as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332 as complete diversity exists between all adverse parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

2.      Venue is proper in the U.S. District Court for the District of Columbia under 28 U.S.C. § 1391(a)(2) insofar as the events, acts and/or omissions giving rise to the Plaintiffs' claims occurred in the District of Columbia.

## PARTIES

3.      Plaintiffs William Preston West, Jr. and wife, Carolyn B. Gleason, are adult citizens and residents of the District of Columbia.

4.      Upon    information    and    belief,    Defendant    Bayer    HealthCare Pharmaceuticals, Inc. ("Bayer") is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey 07470. Defendant Bayer is engaged in the business of researching, developing, designing, licensing, manufacturing,

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the "Betaseron" injection kit.

5.      At all relevant times, Defendant Bayer conducted regular and sustained business in Washington D.C. by selling and distributing its products in the District.

6.      Defendants Triad Group, Inc. and Triad Pharmaceuticals, Inc. (herein collectively referred to as "Triad") are Wisconsin corporations with their principal places of business in Wisconsin. The Triad Defendants regularly conduct business in the District of Columbia and distribute and sell their products in the District of Columbia.

7.      The causes of action which form the basis of this lawsuit arise out of products sold by the Triad Defendants, specifically alcohol pads/swabs that were packaged for use with Defendant Bayer's Betaseron injection kits and that are the subject of this action.

8.      Upon information and belief, Defendant H&P Industries, Inc., ("H&P") is a Hartland, Wisconsin corporation. Defendant H&P regularly conducts business in the District of Columbia and distributes and sells its products in the District of Columbia.

9.      The causes of action which form the basis of this lawsuit arise out of business conducted by said Defendant in the ownership, operation, management and/or control of the facility manufactured, sold, and distributed the alcohol pads/swabs that were packaged for use with Defendant Bayer's Betaseron injection kits and that are the subject of this action.

10.    Upon information and belief, Defendant H&P Industries, Inc. does business as the Triad Group.

11.    Upon information and belief, Defendants H&P and Triad owned and operated the facility as one joint enterprise or as one business entity that manufactured, sold and distributed the alcohol pads/swabs that were selected by Defendant Bayer to be packaged for use with Defendant Bayer's Betaseron injection kits, which injured Mr. West.

## DEFINITIONS

12.    Whenever the term "Defendants" is utilized within this suit, such term collectively refers to and includes all named Defendants in this lawsuit.

13.    The term "alcohol pads/swabs" shall collectively refer to the drug products manufactured by Defendants Triad and H&P and selected for use in the Betaseron injection kits manufactured and distributed by Defendant Bayer.

14.    The alcohol pads/swabs are "drug products" as that term is used in the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 321 *et seq.* and applicable FDA regulations. The alcohol pads/swabs shall mean and refer to a "product" or "drug product" that is subject to the jurisdiction of the Food and Drug Administration. *See* 21 C.F.R. § 7.3(f).

## FACTS

15.    This is an action to recover damages for personal injuries sustained by Plaintiff William Preston West, Jr. (and for loss of consortium damages for his wife,

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Carolyn B. Gleason), as the direct and proximate result of the wrongful conduct of the Defendants in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of the widely-used alcohol pads/swabs used by Plaintiff as an antiseptic to sanitize his skin before performing a self-administered injection of treatment for his Multiple Sclerosis.

16.     Prior to December 29, 2010, Mr. West was prescribed Betaseron for treatment of Multiple Sclerosis ("MS").

17.     Defendant Bayer represents on the Betaseron website: "Betaseron is indicated for the treatment of relapsing forms of MS to reduce the frequency of clinical exacerbations and is shown to delay the progression to clinically definite MS (CDMS) when used from the first event suggestive of MS."

18.     On the evening of December 29, 2010, Mr. West first sterilized the recommended injection site using the antiseptic alcohol pads/swabs, manufactured by Defendants Triad and H&P, which were included in the Betaseron kit specifically for that purpose.  Plaintiff then injected his usual dosage of Betaseron.

19.     On the morning of December 30, 2010, Mr. West awoke to significant soreness and tenderness at the injection site extending out to the right side of his abdomen.

20.     Later that same day, Mr. West consulted a physician at the Greenbrier Resort in White Sulphur Spring, West Virginia, where Plaintiff and his family were

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

vacationing. The doctor determined that Mr. West had a fever of 103 degrees and was suffering from acute pain in the abdomen.

21.     Mr. West was immediately taken to the emergency room at Greenbrier Valley Medical Center, located approximately 15 miles away from the resort. Following CT and ultrasound scans and analysis of Plaintiff's blood and urine, the emergency room physician diagnosed Plaintiff with an infection and initiated intravenous antibiotic infusion. At this time, Plaintiff was experiencing great difficulty yielding urine from his bladder.

22.     Mr. West returned to Greenbrier Resort on December 30, 2010. On December 31, 2010, at approximately 3:00 a.m., he awoke and attempted to go to the bathroom in order to urinate. Before reaching the bathroom, Plaintiff suddenly collapsed. Plaintiff's legs and arms were so weak that he could not move them.

23.     With great difficulty, Mr. West's wife and son attempted to carry him to the toilet. Once placed in a seated position on the toilet, Plaintiff attempted, but failed, to urinate.

24.     Later that morning on December 31, 2010, Mr. West contacted his neurologist, Dr. Justin MacArthur (Director of the Department of Neurology at Johns Hopkins University Hospital in Baltimore, Maryland), who instructed Plaintiff to immediately return to the emergency room and receive a urinary catheter insertion before noon that day.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

25.     Mr. West complied with his neurologist's orders and, upon having his bladder emptied, left the emergency room with the catheter still inserted and a drainage bag strapped to his leg.

26.     On the morning of January 1, 2011, Mr. West flew home to Washington, D.C. Upon arriving at his residence, he observed significant swelling and redness on the right side of his abdomen.

27.     Mr. West immediately went to the emergency room at Sibley Hospital where he was diagnosed with cellulitis within an hour of his arrival. Plaintiff was attended to by the emergency room doctor, a doctor specializing in infectious disease, and a general internist. Due to his medical condition, Plaintiff was admitted to the hospital.

28.     Mr. West remained hospitalized for 11 days and continued to be seen by his various treating physicians and specialists who monitored and treated Mr. West's Multiple Sclerosis symptoms, including bowel and bladder related symptoms and conditions which had been severely aggravated by the cellulitis.

29.     During Mr. West's hospitalization at Sibley Memorial Hospital, he was forced to undergo a flexible sigmoidoscopy due to an intestinal blockage which was directly and proximately caused by the contaminated alcohol pads/swabs.

30.     On January 8, 2011, Mr. West received an email from Bayer Healthcare Pharmaceuticals with the subject heading: "Important Information for Betaseron (interferon beta-1b) Consumers Regarding Triad Group's Alcohol Prep Products." The

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

email informed Plaintiff that "**Bayer Healthcare Pharmaceuticals has become aware of a broad United States market recall of alcohol prep pads, swabs, and swabsticks manufactured by the Triad Group and marketed under various brand names**" and instructed patients using Betaseron, such as Plaintiff, "**to immediately discontinue using the Triad Group alcohol prep pads included in the Betaseron packaging and dispose of those pads in the trash.**" The email also stated the following: "**The recall of the Triad Group alcohol prep products is due to potential contamination of these products with the bacteria, Bacillus cereus, that could lead to life-threatening infections.**"

31.    Upon receiving the email from Defendant Bayer, Mr. West and his physicians determined that the alcohol prep pads manufactured by Defendant Triad and H&P were the direct cause of the health complications Plaintiff had experienced since using said pads at the time of his last Betaseron injection on December 29, 2010.

32.    Mr. West was released from Sibley Hospital on the afternoon of January 11, 2011. He returned home to continue addressing the infection and exacerbated MS symptoms through various prescribed medications, more than 80 intermittent catheter procedures, and a prescribed diet.

33.    For several weeks, Mr. West endured extreme soreness and tenderness on the right side of his abdomen and extreme complications with his bladder and bowel functioning, all requiring the aforementioned prescribed medications, diet, and catheter procedures.

34.    During this period, Mr. West's weight dropped from 180 pounds to less than 160 pounds. Plaintiff also suffered from heightened and aggravated MS symptoms as he fought the bacterial infection that coursed through his body as a result of the contaminated alcohol prep pad he had used on the site of his last Betaseron injection December 29, 2010.

35.    In addition to the extremely difficult and uncomfortable bowel and bladder symptoms, Mr. West also experienced a recurring collection of fluid under his skin at the site of his last Betaseron injection on December 29, 2010. This collection of fluid produced an obtrusion of firm tissue on the right side of Mr. West's abdomen.

36.    Mr. West's infectious disease doctor, Dr. Mark Abbruzzese, prescribed interventional radiology surgery to insert a tube that would drain the fluid and prevent any further infection. This surgery was performed at Sibley Hospital.

37.    Several days after follow-up surgery was performed to remove the tube, Mr. West discovered that the obtrusion had reappeared. As a result, interventional radiology surgery was again required. Unfortunately, this second surgery failed to permanently remove the obtrusion.

38.    As a result of his diagnosed cellulitis and the potential for further infection in Mr. West's body, Plaintiff was forced to delay a critically important move to new treatment for his MS (a monthly infusion of Tysabri).

39.    Mr. West was also forced to avoid any form of medicine to treat his MS symptoms for a period of nearly two months.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

40.     Defendants Triad and H&P were, at all times relevant, manufacturers and sellers of sterile and non-sterile alcohol prep pads, alcohol swabs and alcohol swabsticks that were introduced into the stream of commerce during 2010, and at all times relevant to the allegations made herein.

41.     Defendant Bayer was, at all relevant times, a manufacturer and seller of the Betaseron injection kits containing the alcohol pads/swabs, which were introduced into the stream of commerce during 2010, and at all times relevant to the allegations made herein.

42.     Defendants failed to comply with all government standards that existed at the time the alcohol pads/swabs were manufactured.

43.     Two 2006 FDA inspections of Defendants Triad and H&P's previous two locations that were no longer used in 2009 (Pewaukee, WI and Mukwonago, WI) resulted in "VAI" (voluntary action indicated) as well as discussions with management for failure to address potential contamination in raw material used to manufacture over-the-counter ("OTC") products. According to the 2009 FDA Inspection, "management promised to correct the observations" discussed in the 2006 FDA inspections.

44.     The 2009 FDA Inspection of Triad and H&P's facility detailed TWENTY-ONE federal deficiencies dating back two years prior to 2007.

45.     The 2009 TWENTY-ONE federal observations directly related to the alcohol swabs involved: (1) the poor performance and documentation of the quality control department; (2) inadequate training; (3) inadequate investigations of bad batches

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

of products; (4) failing to quarantine rejected material to prevent its use in manufacturing other products; (5) failing to reject bad products; (6) lack of supplier qualification or validation; and (7) **failure to prevent objectionable microorganisms in products that were not required to be sterile**.

46.   The November 2010 to January 2011 investigation citing FOURTY-SIX federal observations also involved the **failure to prevent objectionable microorganisms** and specifically found, "**there is no microbiological testing of the non-sterile alcohol prep pads** and non-sterile swabsticks."

47.   The Triad and H&P Defendants failed to provide any process for validation of the products that they manufacture even though they manufactured the product for several years.

48.   The Chief Financial Officer of Triad and/or H&P was directly involved in the daily operations of Defendants.

49.   Based upon the conduct of the Triad and H&P Defendants, Plaintiffs allege that these Defendants were more interested in increasing their profits than protecting the public. These investigations detailed that these Defendants were willing to cut corners to allow the alcohol prep pads/swabs to be contaminated with bacteria, which resulted in injuries to Mr. West.

50.   Defendants Triad and H&P did not establish procedures to prevent objectionable microorganisms.

51.     Defendants Triad and H&P admitted that "H&P Industries has, in several instances, been *unsuccessful* in adhering to internal procedures" and further admitted that the number of qualified personnel was "inadequate" for the number of finished goods they manufactured.

52.     Defendants Triad and H&P assured FDA officials that each lot of sterile alcohol pads/swabs "purported to be sterile" would be sterility tested before releasing any products to the market. However, in other documents, not all alcohol prep pads had lot numbers on them.

53.     The Triad and H&P Defendants' sterile and non-sterile alcohol pads/swabs were to be tested for the presence of microorganisms, but Defendants' assurances to FDA officials regarding the suitability testing of the bioburden test methods by mid-February 2011 did not come soon enough for Mr. West.

54.     As mentioned in preceding paragraphs, Mr. West purchased the Betaseron injection kit manufactured by Defendant Bayer, which contained the alcohol pads/swabs manufactured and sold by Defendants Triad and H&P for use in the preparation, cleaning, and disinfection of an injection site prior to administration of treatment of his Multiple Sclerosis.

55.     The alcohol pad/swabs manufactured and sold by the Defendants were in a defective condition and unreasonably dangerous when put to their intended use such that the pads/swabs were unsafe for normal or anticipated handling and consumption.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

56.     The alcohol pads/swabs were contaminated with the bacterium *bacillus cereus*.

57.     The ordinary consumer such as Mr. West would not contemplate that alcohol pads/swabs would be contaminated or in a defective condition or unreasonably dangerous.

58.     Use of the contaminated alcohol pads/swabs could lead to life-threatening infections, especially for those who, like Mr. West, are at higher risk due to their health status.

59.     Mr. West's health complications, including but not limited to his diagnosis of cellulitis, the exacerbation of his MS symptoms, bladder and bowel dysfunction, the skin obtrusions on his abdomen at the site of his last Betaseron injection, weight loss, and pain and suffering were determined to be caused by a bacterial infection from the bacterium *bacillus cereus* ("bacteria")*,* which contaminated the alcohol prep pads/swabs that Plaintiff, at the recommendation of Defendants, used on December 29, 2010 to clean and disinfect the site of his injection

60.     As a direct and proximate result of the Defendants' wrongful conduct which directly caused the bacterial infection, Mr. West suffered significant injuries and damages,  including complications from the bacteria and is at risk for future complications and damages.

61.     As a further direct and proximate result of the Defendants' wrongful conduct in causing the bacterial infection, Mr. West suffered significant damages

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

including, but not limited to, a severe progression of his underlying MS, pain, suffering, mental anguish, permanent disability, permanent impairment, physical pain, medical and rehabilitative expenses, lost earnings and/or loss of wage-earning capacity, and other injuries and damages.

62.     Plaintiff Carolyn B. Gleason has suffered severe emotional distress as a result of the injuries to her husband, and sustained the loss of consortium, society, care and comfort of her husband as a direct and proximate result of the aforementioned infection.

## COUNT I
### (Negligence, Gross Negligence and Failure to Recall)

63.     The Plaintiffs incorporate, by reference, Paragraphs 1 through 62, as if fully set forth herein, and allege that, at all times relevant, Defendants owed a duty of reasonable care in manufacturing, constructing, designing, preparing, assembling, testing, inspecting, warning, marketing, advertising, packaging or labeling its products, including the sterile and non-sterile alcohol pads/swabs.

64.     The Plaintiffs further allege that at all times relevant, the Defendants knew or had reason to know the sterile and non-sterile alcohol pads/swabs were being distributed to individuals who were using the pads/swabs for pre-injection sterilization.

65.     The Plaintiffs further allege that at all relevant times, the Defendants owed a duty not to introduce into the stream of commerce, including the District of Columbia, products which are defective or unreasonably dangerous to the consumer.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

66.     Plaintiffs further allege that Defendants failed to carry out their duty of reasonable care in manufacturing, constructing, designing, preparing, assembling, testing, inspecting, warning, marketing, advertising, packaging or labeling its products including its sterile and non-sterile alcohol pads/swabs.

67.     Plaintiffs further allege that Defendants knew or should have known through the exercise of reasonable care that their failure to properly manufacture, test, or inspect the alcohol pads/swabs for contamination and defects would cause harm to people, such as Mr. West, who use those products.

68.     Plaintiffs further allege that Defendants had a duty to recall the contaminated alcohol pads/swabs when they knew or in the exercise of reasonable care should have known that the products posed extreme dangers and hazards to consumers such as Mr. West.

69.     The careless, reckless and/or negligent conduct of Defendants, which when viewed objectively from its standpoint at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of potential harm to others.

70.     The Plaintiffs further allege that the Defendants Bayer, Triad and H&P had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others. Consequently, this conduct constitutes gross negligence.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

71.    As a direct and proximate result of Defendants' combined negligence, carelessness, recklessness, gross negligence and wantonness, Plaintiffs have suffered severe injury and damages as described in this lawsuit.

## COUNT II
### (Failure to Warn or Instruct)

72.    The Plaintiffs incorporate, by reference, Paragraphs 1 through 71, as if fully set forth herein, and further allege that at all times relevant, Defendants failed to warn of the problems and/or potential contamination of the alcohol pads/swabs and other products manufactured at the facility they operated and controlled.

73.    The Plaintiffs further allege that the Defendants had a duty to warn the medical community and consumers as soon as they knew its products may be adulterated or harmful and/or dangerous.

74.    The Defendants failed to adequately inform the medical community or the public of the dangers associated with alcohol swabs/pads when it first learned of the presence of the bacteria within its manufacturing plant and/or its products.

75.    The Defendants had no procedures in place to report or act on manufacturing or packaging problems.

76.    The Defendants displayed reckless disregard for the rights of consumers, and specifically Mr. West, when they manufactured and distributed a product which they knew or should have known was unreasonably dangerous for its intended use, failed to warn the medical community or general public of the bacterium as soon as Defendants

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 16 -

knew of the presence of the bacterium, or issue a voluntary recall, unjustifiably exposing Plaintiff to an unreasonable risk of injury. As such, Defendants are liable for punitive damages.

77.     As a direct and proximate cause of the failures of Defendants to adequately warn of the dangers associated with this product and to otherwise discharge their legal duties, the Plaintiffs have sustained serious harms and losses, as described in this lawsuit.

## COUNT III
### (Strict Liability)

78.     The Plaintiffs incorporate, by reference, Paragraphs 1 through 77 above, as if fully set forth herein, and further allege that as the seller and/or manufacturer and/or distributor of the alcohol pads/swabs, all Defendants had a duty to make the alcohol pads/swabs safe for the general public and/or to warn the public of their contamination.

79.     By allowing contaminated alcohol pads/swabs to be disseminated into the stream of commerce, Defendants breached that duty.

80.     The Defendants' breach of the duty was the actual and proximate cause of Plaintiffs' injuries.

81.     The alcohol pads/swabs were defectively designed and/or manufactured because the foreseeable risks of contamination outweigh the benefits associated with the product, particularly given that correct manufacturing methods and technology allows a manufacturer to produce alcohol pads/swabs that are not contaminated.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

82.    The alcohol pads/swabs were designed and/or manufactured in a manner that was in violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 321 *et. seq.* and applicable FDA regulations. The facilities or controls used by Defendants in the manufacture, packing, storage, or holding of a drug product were not in conformity with applicable regulations and FDA-approved specifications or the GGMP requirements set forth in the FDA's current good manufacturing practice for finished pharmaceuticals, 21 C.F.R. Part 211.

83.    The alcohol pads/swabs were expected to, and did, reach consumers such as Mr. West without substantial change or adjustment.

84.    Defendants knew or should have known of the design and manufacturing defect and the risk of serious bodily injury that outweighed the benefits associated with the design and manufacturing, packing, and storage of the alcohol pads/swabs.

85.    The alcohol pads/swabs presented an unreasonably dangerous risk beyond what the ordinary consumer would reasonably expect.

86.    The alcohol pads/swabs were inherently dangerous for their intended use due to design and/or manufacturing defect and contamination, and, as a result, Defendants are strictly liable for the harms and losses suffered by the Plaintiffs.

87.    As a direct and proximate result of Defendants' wrongful conduct, the Plaintiffs have sustained, and will continue to sustain, injury and damages, as described in this lawsuit.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

## COUNT IV
### (Breach of Implied Warranty of Merchantability)

88.    The Plaintiffs incorporate, by reference, Paragraphs 1 through 87, as if fully set forth herein, and further allege that Defendants manufactured, distributed, and/or sold alcohol pads/swabs that could/would/did not pass without objection in the disposable medical device/product/supply trade. Said alcohol pads/swabs were recalled due to bacterial contamination.

89.    The alcohol pads/swabs manufactured, distributed, and/or sold by Defendants were not fit for the uses for which such goods are designed and manufactured. Alcohol prep pads or swabs are specifically used as an antiseptic wipe for injection sites.

90.    Mr. West used said alcohol prep pads/swabs as an antiseptic wipe for self-administered injection sites, suffered and infection, and sustained damages therefrom.

91.    The alcohol pads/swabs manufactured, designed and/or distributed by Defendants did not conform to the promises or affirmations of fact made on the labels. Said labels promised or affirmed that the contents included an antiseptic alcohol pad/swab.

92.    Through the use of the alcohol prep pads/swabs designed, manufactured and distributed by Defendants, Mr. West suffered an infection and sustained damages.

93.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability as described above, Mr. West has suffered and will continue

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

to suffer damages including, but not limited to, severe progression of his underlying MS, physical pain, suffering, mental anguish, emotional distress, physical impairment, medical expenses, loss of wages and/or wage-earning capacity, and other injuries and damages.

## COUNT V
### (Negligence Per Se, Violation of FDA Regulations – Defendant Bayer)

94.     The Plaintiffs incorporate, by reference, Paragraphs 1 through 93, as if fully set forth herein, and further allege that Defendant Bayer violated FDA statutes and/or regulations in connection with their legal obligations to regularly inspect and sample the goods/products they were receiving from Defendants Triad and/or H&P.

95.     Plaintiffs further allege that pursuant to FDA Regulations 21 CFR 210 and 21 CFR 211, Defendant Bayer was required by federal statute to exercise appropriate oversight over the incoming products from Defendants Triad and H&P.  Pursuant to the FDA regulations, Defendant Bayer was required to establish a quality control unit to approve or reject all products received from Defendants Triad and/or H&P and assure that no errors have occurred, and if errors have occurred, that they have been fully investigated.

96.     Pursuant to federal regulations, Defendant Bayer was further required to sample representative portions of each shipment received from Defendants Triad and/or H&P in order to subject them to testing and examination to determine whether they were safe for their intended purpose.

97.    Plaintiff further alleges that Defendant Bayer violated the above-referenced FDA regulations by failing to inspect the products from Defendants Triad and H&P and failing to sample representative portions of the products to determine that they were safe for their intended purpose, and such conduct constitutes negligence per se.

98.    As a direct and proximate result of Defendant Bayer's negligent and/or intentional conduct in violating the applicable FDA regulations, Mr. West suffered serious damages including, but not limited to, severe progression of his underlying MS, physical pain, suffering, mental anguish, emotional distress, physical impairment, significant medical expenses, loss of earnings and/or wage-earning capacity, and other injuries and damages directly and proximately caused by the conduct of Defendant Bayer.

## COUNT VI
### (Negligence Per Se, Violation of FDA Regulations – Defendants Triad and/or H&P)

99.    The Plaintiffs incorporate, by reference, Paragraphs 1 through 98, as if fully set forth herein, and further allege that Defendants Triad and/or H&P violated FDA statutes and/or regulations by failing to manufacture, package, test, inspect, label and distribute alcohol pads/swabs in accordance with all of the statutory and regulatory requirements relating to products of this nature.

100.    Plaintiffs further allege that pursuant to FDA Regulations 21 CFR 210 and 21 CFR 211, Defendants Triad and H&P were required by federal statute to exercise appropriate oversight over the products they were manufacturing.  Pursuant to the FDA

regulations, Defendants Triad and H&P were required to establish a quality control unit to approve or reject all products received they manufactured to assure that no errors had occurred, and if errors had occurred, that they were fully investigated.

101.    Pursuant to federal regulations, Defendants Triad and H&P were further required to sample representative portions of each shipment they prepared in order to subject them to testing and examination to determine whether they were safe for their intended purpose.

102.    Plaintiff further alleges that Defendants Triad and H&P violated the above-referenced FDA regulations by failing to manufacture, package, test, inspect, label and distribute alcohol pads/swabs in accordance with all of the statutory and regulatory requirements relating to these products, in order to determine that they were safe for their intended purpose, and such conduct constitutes negligence per se.

103.    As a direct and proximate result of Defendants Triad & H&P's negligent and/or intentional conduct in violating the applicable FDA regulations, Mr. West suffered serious damages including, but not limited to, severe progression of his underlying MS, physical pain, suffering, mental anguish, emotional distress, physical impairment, significant medical expenses, loss of earnings and/or wage-earning capacity, and other injuries and damages directly and proximately caused by the conduct of Defendants Triad & H&P.

# COUNT VII
## (Breach of Implied Warranty of Fitness for
## a Particular Purpose—Against Defendant Bayer)

104.    The Plaintiffs incorporate, by reference, Paragraphs 1 through 103, as if fully set forth herein, and further allege that Defendant Bayer distributed and/or sold the contaminated alcohol prep pads/swabs that form the basis of this cause of action with its Betaseron treatment kits.

105.    Defendant Bayer specifically markets its Betaseron treatment kits with antiseptic alcohol pads/swabs and represents that these alcohol prep pads/swabs are necessary for the safe injection of Betaseron.

106.    Mr. West relied on the Bayer Defendants' skill and judgment in selecting a suitable antiseptic wipe.

107.    The Plaintiffs further allege that said alcohol pads/swabs were not suitable as an antiseptic wipe for injection sites. Said alcohol pads/swabs were recalled due to bacterial contamination.

108.    Mr. West used said alcohol pads/swabs as an antiseptic wipe on self-administered injection sites, suffered and infection, and sustained damages therefrom.

109.    As a direct and proximate result of Defendant Bayer's breach of its implied warranty of fitness for a particular purpose, Mr. West has suffered and will continue to suffer damages including, but not limited to, a severe progression of his underlying MS, physical pain, suffering, mental anguish, emotional distress, physical

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

impairment, medical expenses, loss of wages and/or wage-earning capacity, and/or other injuries and damages as described throughout this lawsuit.

## COUNT VIII
### (Punitive Damages under Common Law)

110.   The Plaintiffs incorporate, by reference, Paragraphs 1 through 109 above, as if fully set forth herein, and further allege that Plaintiffs are entitled to punitive damages because the Defendants' wrongful acts and/or omissions were wanton or in conscious disregard of the rights of others. Defendants misled both the medical community and the public at large, including Plaintiff, by making false representations about the safety of the alcohol pads/swabs and by failing to provide any warnings with regard to the unreasonably dangerous risks associated with the use of Defendants' alcohol pads/swabs.

111.   Defendants' displayed blatant disregard and conscious indifference for the serious and life-threatening risks associated with the use of the contaminated alcohol pads/wipes, despite having subjective awareness of these risks.

112.   Defendants' misrepresentations included knowingly withholding material information from the FDA, the medical community, and the public, including Plaintiff, concerning the safety of the alcohol pads/swabs.

113.   Defendants breached their legal duty to Plaintiffs by manufacturing and distributing alcohol pads/swabs that were defective and unreasonably dangerous, rendering them unsafe for their normal, intended use.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

114.    Defendants further breached their legal duty to Plaintiffs by failing to recall the contaminated alcohol prep pads/swabs when they knew or, in the exercise of reasonable care, should have known that the pads were contaminated and posed severe dangers and hazards to consumers such as Mr. West.

115.    As a direct and proximate result of Defendants' actions, Mr. West has suffered injury

## COUNT VIX
### (Loss of Consortium)

116.    Plaintiff Carolyn B. Gleason incorporates, by reference, Paragraphs 1 through 115 above, as if fully set forth herein, and further alleges that she is, and was at the time of the incident alleged, the wife of Plaintiff William Preston West, Jr.

117.    Plaintiff Carolyn B. Gleason further alleges that as a direct and proximate result of the negligent acts and/or omissions of the Defendants, as previously described, she has spent considerable time caring for and assisting her husband due to the injuries he has suffered as a result of Defendants' negligence.

118.    As a direct and proximate result of this incident and her husband's injuries, Plaintiff Carolyn B. Gleason has sustained losses of society, companionship and consortium.

**WHEREFORE,** Plaintiff William Preston West, Jr., demands judgment of the Defendants, Bayer Healthcare Pharmaceuticals, Inc., Triad Group, Inc., Triad Pharmaceuticals, Inc., and H&P Industries, Inc., jointly and severally, in the full and just

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

amount of Five Million Dollars ($5,000,000.00) in compensatory damages, plus pre-judgment interest, plus interest and costs.

**WHEREFORE,** Plaintiff William Preston West, Jr., demands judgment of the Defendants, Bayer Healthcare Pharmaceuticals, Inc., Triad Group, Inc., Triad Pharmaceuticals, Inc., and H&P Industries, Inc., jointly and severally, in the full and just amount of Five Million Dollars ($5,000,000.00) in punitive damages, plus pre-judgment interest, plus interest and costs.

**WHEREFORE,** Plaintiff Carolyn B. Gleason respectfully demands judgment against the Defendants in the full and just amount of One Million Dollars ($1,000,000.00), plus interest and costs.

## JURY DEMAND

The Plaintiffs respectfully request a trial by jury on all of the above claims.

Respectfully submitted,

REGAN ZAMBRI & LONG, PLLC

By: _____
Patrick M. Regan       #336107
pregan@reganfirm.com
Jacqueline T. Colclough  #434483
jcolclough@reganfirm.com
1919 M Street, NW, Suite 350
Washington, DC  20036
PH:  (202) 463-3030
FX:  (202) 463-0667
*Counsel for Plaintiffs*

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030